562 So.2d 375 (1990)
Laurie J. ROBY, Appellant,
v.
Wayne B. NELSON, Appellee.
No. 89-1606.
District Court of Appeal of Florida, Fourth District.
May 23, 1990.
Rehearing Denied July 6, 1990.
*376 William L. Roby of Crary, Buchanan, Bowdish and Bovie, Stuart, for appellant.
Russell J. Ferraro, Jr. of DeSantis, Cook, Ferraro & McCarthy, P.A., Stuart, for appellee.
WARNER, Judge.
This is an appeal from an order granting a former husband's motion to dismiss or abate a child custody modification action and other related actions based on the continuing jurisdiction provisions of the Uniform Child Custody Jurisdiction Act. We affirm on all points and address the issue presented on the interpretation of the U.C.C.J.A.
The parties were divorced in Iowa in 1979 at which time the wife, by agreement, retained custody of the minor daughter. In 1987 the wife and child moved to Florida with the wife's new husband. The former husband also left Iowa for Kansas. After returning from a holiday visit with her father, the daughter requested that she be allowed to take an extended visitation with her father in Colorado where he moved in 1988. After extensive negotiations between the wife and the husband resulted in a written agreement, the daughter was permitted this extended visit on the condition that it was temporary only, that the former husband would continue to make child support payments to the wife in Florida, and that the child would be returned to Florida at the end of the visitation period. The child went to Colorado in the end of January, 1988.
Despite his agreement, the former husband filed a petition in Colorado, only five months later, requesting modification of the Iowa decree to give him permanent residential custody of the daughter. While first contesting jurisdiction of the Colorado court, the wife travelled to Colorado and submitted to that court's jurisdiction and entered into an agreement with the husband giving him residential custody of the daughter. This agreement appointed a guardian ad litem for the child, permitted the wife to have summer visitation, and abated the child support provisions of the Iowa decree. The parties appeared before the Colorado Court which signed an order approving the stipulation in August, 1988. The order recited that the matter was heard "on its merits."
After the agreement was signed, the wife and daughter returned to Florida where the daughter expressed her definite desire not to return to Colorado. The ex-husband thereafter agreed to the daughter's reassimilation into the wife's family, and he even signed a consent to his daughter's adoption by the wife's new husband. The wife and her new husband apparently elected not to proceed with the adoption. Instead, after the child had resided in Florida for the required six months the wife filed the instant petition for relief from the Colorado decree, or alternatively, for a modification of the Colorado decree; for child support; for breach of contract; for fraud; and to pierce the corporate veil of the husband's Colorado corporation.
The husband moved to dismiss or transfer the cause to Colorado, asserting lack of personal jurisdiction and jurisdiction over the subject matter in that Colorado was the more appropriate forum for litigation of the custody issue. Despite his contention, he did not seek to reactivate the Colorado *377 custody proceedings, and the Colorado court entered an order dismissing the proceedings for lack of prosecution. Subsequently, the Florida trial court granted the husband's motion to dismiss/abate on the ground that since Colorado had retained jurisdiction, the Florida courts should decline to exercise jurisdiction. The court additionally dismissed the related actions on child support, breach of contract, and fraud both on the grounds of lack of Florida jurisdiction and the retention of jurisdiction over these issues in Colorado.[1]
The issue presented in this case regards the proper application of the Uniform Child Custody Jurisdiction Act's provisions concerning modification of a custody decree of another state. Section 61.133, Florida Statutes (1987). Codifying and strengthening the principle of recognition of out of state custody decrees was central to the purposes of the Act which goals were to ...
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expend the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
(9) Make uniform the law with respect to the subject of this act among states enacting it.
Florida and Colorado have both enacted the provisions of the U.C.C.J.A. in substantially similar form. Sections 61.1302-61.1348, Florida Statutes (1987); Section 14-13-101 et seq., C.R.S. (1987 Repl. Vol. 6B).
Florida Statute Section 61.133 (1987) governs the issue of continuing jurisdiction of a state over custody decrees:
Modification of custody decree of another state.
(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:
(a) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and
(b) The court of this state has jurisdiction.
(Emphasis supplied.)
This statute implements the Act's purpose of recognizing the continuing exclusive jurisdiction of the state entering the initial decree until that state loses all jurisdiction under the act or declines to exercise its jurisdiction in accordance with the best interests *378 of the child. Steckel v. Blafas, 549 So.2d 1211 (Fla. 4th DCA 1989); Hamill v. Bower, 487 So.2d 345 (Fla. 1st DCA 1986). See also Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, 14 Fam.L.Q. 203, 214 (1981).
A state of initial jurisdiction loses all jurisdiction under the act to modify its decree if at the time of modification none of the jurisdictional prerequisites of the act can be met in the original state. Jurisdiction is lost when the child and all of the parties move away from the original state. Steckel. However, where one party still resides in the state of initial jurisdiction and significant contact jurisdiction has not been broken by, for instance, failure to exercise visitation, that state exercises exclusive continuing jurisdiction to modify its custody decree. See O'Connor v. O'Connor, 447 So.2d 1034 (Fla. 4th DCA 1984) quoting Bodenheimer, Uniform Child Custody Jurisdiction Act (1969) 22 Vand.L. Rev. 1207, 1237. Whether or not the initial jurisdiction state can still exercise jurisdiction in conformance with the act is a question to be determined by the court of this state when a request is made to modify an out-of-state custody decree. See Gordey v. Graves, 528 So.2d 1319 (Fla. 5th DCA 1988). See also Bakke v. District Court, 719 P.2d 313 (Colo. 1986).
Once continuing jurisdiction ends as a result of all parties leaving the state of the initial decree or otherwise, jurisdiction to modify is determined again under the provisions of section 61.1308, Florida Statutes (1987). Steckel. In such circumstances jurisdiction should generally be asserted by the state in which the child resides with the custodial parent. See Bodenheimer, 14 Fam.L.Q., at 224-225. Nevertheless, where the custodial parent voluntarily consents and litigates in a new state which can claim jurisdiction substantially in conformance with section 61.1308, Florida Statutes (1987), even where another state may also claim jurisdiction, then the new state's decrees should be honored. See Mondy v. Mondy, 428 So.2d 235 (Fla. 1983); Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979). See also Bodenheimer, 22 Vand.L.Rev. at 1229.
Thus in determining whether Florida can exercise modification jurisdiction with respect to the custody decree of another state the trial court faces a three step process, and the fact that Florida might also have a basis for exercising jurisdiction is not controlling. First, the Florida court must determine whether or not the state entering the decree "assumed jurisdiction under statutory provisions substantially in accordance with this act, or which decree was made under factual circumstance meeting the jurisdictional standards of the act... ." Fla. Stat. Section 61.1328 (1987). Second, the trial court must determine whether the original state can still exercise jurisdiction in conformity with the act. Finally, if the trial court determines that continuing jurisdiction in the original state has not terminated, it should consult with the original state to determine whether or not it will exercise or decline to exercise its continuing jurisdiction. If the original state does not decline jurisdiction, then the courts of this state must decline jurisdiction under section 61.133, Florida Statutes (1987).
Applying these principles to the facts of this case, while the trial court noted that Florida could exercise home state jurisdiction, that fact was not controlling. And although Iowa was the state of original jurisdiction, its continuing jurisdiction had terminated because all of the parties had moved out of state. Steckel. Thus, either Colorado or Florida, the states of residence of the husband and wife, had a claim to jurisdiction under the act. While Colorado never had home state jurisdiction, it could and apparently did assert jurisdiction under the "significant connection test", since the daughter had been residing in the state for the previous five months and there was available in the state substantial evidence concerning the daughter's present and future care. The wife at first contested the jurisdictional issue but then personally appeared before the court and thus consented to the entry of Colorado judgment incorporating the parties stipulation *379 as to custody, visitation, child support, and attorney's fees, which covered future matters between the parties. Having waived any objection to Colorado's jurisdiction and by appearing personally in the Colorado courts, she cannot now be heard to complain that Colorado did not have jurisdiction to enter its order. Cf. Detkto/Roberts v. Stikelether; Bodenheimer, 22 Vand.L.Rev., at 229.
The Colorado order recites that the matter came before the court on the merits, and we must conclude that this was a final order. Although the Colorado court later sent a sua sponte dismissal of the action for failure to prosecute, we do not interpret that as rendering the prior order a nullity. In fact, we are very perplexed as to what effect, if any, that order had when all matters between the parties had been settled by the prior order. Nor does the wife's petition in the Florida trial court treat that order as a nullity, since her cause of action was for relief from the Colorado judgment.
Having established jurisdiction of the Colorado courts in substantial conformity with the provisions of the U.C.C.J.A., the next inquiry is whether Colorado could continue to exercise jurisdiction in substantial conformity with the act. Since Colorado cannot exercise home state jurisdiction, the trial court had to evaluate whether there were "significant connections" to warrant the continuation of jurisdiction. At the time the wife filed her petition in Florida to modify the Colorado decree, a guardian ad litem for the child was still functioning in the case. According to the affidavits, the wife had kept in close contact with the Colorado guardian. The trial court's order recites that child studies had been performed in Colorado. Therefore, there was active involvement of the courts of the state of Colorado in these proceedings. That activity constitutes significant connection to Colorado in this matter. See Herrero v. Matas, 447 So.2d 335 (Fla. 3d DCA 1984). Moreover, the husband still resided in the state at the date of the trial court order. While he had but one contact with the child in six months and had consented to her adoption by the wife's new husband, the petitioner has disavowed that consent by filing this action. Generally, continuing exclusive jurisdiction is satisfied so long as the state of the prior decree remains the state of residence of the child or of either contestant. See O'Connor v. O'Connor at 1037. While it may be broken by loss of contact, we cannot find that a loss of contact for only six months under the circumstances which developed in this case is sufficient to warrant a finding that Colorado could no longer exercise jurisdiction substantially in conformance with the act, especially when its courts actively exercised jurisdiction throughout that six month period. Finding competent substantial evidence to support the trial court's conclusion, we would be exceeding our authority to overturn the trial court's factual determination.
Finally, the trial court's order recites that the judge contacted the Colorado court and the presiding judge in Colorado "personally indicated to this court that Colorado retains jurisdiction." Since Colorado expressed an unmistakable intention not to decline jurisdiction, the trial court appropriately, and consistent with the U.C.C.J.A., declined to exercise jurisdiction over this case.
We are not unsympathetic to the situation of the wife. However, she voluntarily consented to jurisdiction in Colorado. While there are significant factors which may tempt the court to assert Florida jurisdiction, the old adage that hard cases make bad law is applicable here. While we may disagree with the Colorado court's refusal to decline jurisdiction, so long as it had continuing jurisdiction to act our courts must defer to its continuing exclusive jurisdiction. Otherwise, the U.C.C.J.A. is not properly interpreted, its salutory purposes are not accomplished, and the potential for forum shopping to achieve a parent's desired result will continue. We therefore affirm the trial court's order dismissing the petition.
Affirmed.
STONE and POLEN, JJ., concur.
NOTES
[1] We affirm these rulings, and, we reject appellant's contention that appellee waived any defense of lack of personal jurisdiction by filing a motion to transfer venue with his motion to dismiss for lack of jurisdiction. This is specifically permitted by the Rule 1.140(b), Florida Rules of Civil Procedure which states "No defense or objection is waived by being joined with other defenses or objections in a responsive pleading or a motion."